791 F.2d 242
 NIAGARA MOHAWK POWER CORPORATION, Plaintiff-Appellant,
v.
BANKERS TRUST CO. OF ALBANY, N.A., U.S. Department of
Housing & Urban Development; Mulberry Apartment
Housing Development Fund Company, Inc.,
Defendants-Appellees.
 No. 321, Docket 85-6110.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 6, 1985.
Decided May 22, 1986.
Opinion on Rehearing July 23, 1986.
 
 Anthony J. Fazio, Syracuse, N.Y., for plaintiff-appellant.
 Herbert L. Levy, Associate Regional Counsel, U.S. Dept. of H.U.D. (Frederick W. Scullin, Jr., U.S. Atty. N.D.N.Y., of counsel), for defendants-appellees.
 Before LUMBARD, CARDAMONE and WINTER, Circuit Judges.
 WINTER, Circuit Judge:
 
 
 1
 This is a defensive interpleader action brought by the Bankers Trust Company of Albany, N.A. ("Bankers Trust"). Niagara Mohawk Power Corporation ("Niagara Mohawk"), an electric and gas utility, appeals from a grant of summary judgment holding that the Department of Housing and Urban Development ("HUD") was entitled to the full amount of a fund held by Bankers Trust. In so ruling, the district court rejected Niagara Mohawk's claim to a portion of this fund as payment for utility services rendered to a housing project. We reverse on the authority of S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28 (2d Cir.1979), and remand for further proceedings.
 
 
 2
 Niagara Mohawk is attempting to collect payment for gas and electric utility services provided to the Mulberry Square Apartments, a residential complex in Syracuse, New York, containing approximately 381 units. In order to build the project, the Mulberry Apartment Housing Development Fund Company, Inc. ("Mulberry") obtained a mortgage loan of $5.6 million from the Marine Midland Trust Company of Central New York in December, 1967. HUD provided mortgage insurance for this loan, pursuant to the National Housing Act, which encourages the building of housing for moderate income and displaced families, 12 U.S.C. Sec. 1715l (d)(3). The mortgage was assigned to the Government National Mortgage Association on February 19, 1969. Perhaps before that date, but in no event later than early 1970, Mulberry defaulted on the mortgage. On January 24, 1974, the Government National Mortgage Association made a claim for reimbursement under the mortgage insurance contract and assigned the mortgage to HUD as that contract provided.
 
 
 3
 Rather than foreclose immediately, HUD made several attempts to shore up Mulberry. These included offering the project for sale and creating a "Project Improvement Account" to provide an infusion of cash. This account was established pursuant to HUD's "Flexible Subsidy Assistance Program," 12 U.S.C. Sec. 1715z-1a(g) and 24 C.F.R. Part 219, a program intended to provide financial assistance to low- and moderate-income housing projects. On June 25, 1981, HUD and Mulberry entered into a "Financial Assistance Contract" that formalized a loan from HUD to Mulberry of $651,088. The loan money was placed in the Project Improvement Account, which was opened at Bankers Trust. Use of this account was governed by a Financial Assistance Depository Agreement among Bankers Trust, HUD, and Mulberry, which provided that the account funds remained HUD's money and authorized the release of the funds which remained in the account until July 14, 1982, at which time, the authorization to expend funds for the benefit of Mulberry expired. It provided for the automatic expiration of the arrangement on July 1, 1982. On March 19, 1982, however, Bankers Trust received a letter from HUD freezing the account, from which no proceeds had yet been disbursed.
 
 
 4
 In addition to the mortgage default, the Mulberry project was in arrears in paying for many other services, including utility services provided by Niagara Mohawk. Niagara Mohawk brought an action against Mulberry in state court, and a default judgment was entered in the sum of $445,926.36 on July 27, 1982. Unable to collect from Mulberry, Niagara Mohawk sought to execute upon the Project Improvement Account at Bankers Trust. HUD, in conjunction with the United States Attorney for the Northern District, successfully removed the execution proceeding to the district court, and on June 7, 1983, that court granted Bankers Trust's motion for permission to file a defensive interpleader action against HUD and Niagara Mohawk. Niagara Mohawk asserted cross-claims against HUD claiming that HUD was the real party in interest in the Mulberry project, that HUD had been unjustly enriched, and that Niagara Mohawk should be entitled to satisfy its judgment against Mulberry out of the Project Improvement Account at Bankers Trust.
 
 
 5
 After completion of discovery, the government and Niagara Mohawk moved for summary judgment. Chief Judge Munson granted the government's motion on the following grounds: (i) the instant action was not a contract action but a lawsuit against the United States for property, and therefore the district court had jurisdiction; (ii) the Project Improvement Account was the "absolute property" of HUD; (iii) Niagara Mohawk had not succeeded in showing sufficient control of Mulberry by HUD requisite to pierce Mulberry's corporate veil; and (iv) HUD had violated no legal duty to Niagara Mohawk. We reverse and remand.
 
 DISCUSSION
 
 6
 HUD contends that the district court lacked subject matter jurisdiction because the instant case is a claim for damages against the United States in excess of $10,000, and is therefore governed by the Tucker Act, 28 U.S.C. Secs. 1346(a)(2), 1491, which waives sovereign immunity but vests jurisdiction exclusively in the Court of Claims. We disagree. The removal statute used by the government in this case, 28 U.S.C. Sec. 1442(a)(1), confers jurisdiction as well as the right of removal. Silberblatt, 608 F.2d at 35. As for sovereign immunity, 12 U.S.C. Sec. 1702 authorizes the Secretary of HUD, in carrying out the provisions at issue in the present case, "to sue and be sued in any court of competent jurisdiction," without classifying such suit as one against the United States. We have previously held that Section 1702 waives sovereign immunity. Silberblatt, 608 F.2d at 35-36; see also Trans-Bay Engineers & Builders, Inc. v. Hills, 551 F.2d 370, 376 (D.C.Cir.1976).
 
 
 7
 Niagara Mohawk's principal claim on the merits is that HUD was unjustly enriched at the utility's expense, because, if Niagara Mohawk had not continued to supply gas and electricity to the project's tenants, the tenants would not have paid the rents that accrued ultimately to the benefit of HUD. The utility relies almost entirely on our decision in Silberblatt, which approved two earlier cases, F.W. Eversley & Co. v. East New York Non-Profit HDFC, Inc., 409 F.Supp. 791 (S.D.N.Y.1976), and Trans-Bay Engineers & Builders Inc. v. Hills, supra. In Silberblatt, the plaintiff had been the general contractor for a low-income housing project. Financing of the construction was to be provided by a bank mortgage loan insured by HUD, the proceeds of which were to be advanced periodically as construction proceeded. Before completion, the project defaulted on the mortgage, and the bank, declining to make further advances, claimed reimbursement on the mortgage insurance and assigned the mortgage to HUD. The general contractor, meanwhile, had not been paid for some of the work performed, and, lacking the usual remedy of a mechanic's lien as a consequence of the terms of the construction contract, brought an action against HUD. The contractor claimed, inter alia, that HUD had been unjustly enriched by the failure to pay for the goods and services it, the contractor, had provided to the project.
 
 
 8
 The district court granted HUD's motion for summary judgment. We reversed, stating: "To sustain a claim of unjust enrichment a plaintiff must show that the defendant has at the plaintiff's expense been enriched and unjustly so, such as when the defendant receives requested goods or services without paying any compensation therefor." 608 F.2d at 37. We found that, because of "HUD's involvement in the planning, development, and operation of the project and the public function of the completed structure itself ... HUD assumes almost all the indicia of actual ownership except the status of title holder of record." Id. (footnotes omitted). We concluded: "Although HUD is not technically the owner of [the] project, it is 'enriched' by the goods and services provided by the contractor." Id. Finally, we held that any judgment recovered by the plaintiff was to be based on principles of quantum meruit and was not limited to undisbursed mortgage proceeds.
 
 
 9
 There are a number of parallels between the project in Silberblatt and the Mulberry project in the instant case. Both mortgages were insured by HUD, which retained the option in each case to take possession of the premises, and the mortgagee here had the same, limited financial exposure as the mortgagee in Silberblatt. HUD exercised pervasive influence in defining the agreements that governed the financing and operation of both projects: in the instant case, it appears that HUD established the rental guidelines, promulgated the rental forms, and approved the architectural plans. Mulberry had no separate assets under its control. It had no employees, no bank account in its name, and no separate office or meeting room. Mulberry was undercapitalized from its inception and without significant assets to pay its debts. The crucial financial documents were prepared on forms issued by the Federal Housing Administration, a HUD bureau. See Silberblatt, 608 F.2d at 31-33. As for the public functions of the projects, we stated in Silberblatt that the project there, built pursuant to Section 236 of the National Housing Act, as amended, 12 U.S.C. Sec. 1715z-1, carried out "the Congressional directive to make available low-cost housing to individuals and families of modest means." 608 F.2d at 37. The Mulberry project was built pursuant to Section 221 of the National Housing Act, as amended, 12 U.S.C. Sec. 1715l, which is explicitly intended "to assist private industry in providing housing for low and moderate income families and displaced families." After examining the planning, development, and operation of the two projects, as well as their public functions, we conclude that the instant case falls squarely within Silberblatt.
 
 
 10
 The government attempts to distinguish Silberblatt on the grounds that the utilities supplied by Niagara Mohawk were ephemeral and thus not the equivalent of the bricks and mortar supplied by the contractor in the earlier case. In proffering this supposed distinction, the government does not explain why an enrichment is any more or less unjust because the services supplied are consumable. The government cites only Van-Tex, Inc. v. Pierce, 703 F.2d 891 (5th Cir.1983), in support, but that case failed to mention the proposed distinction and explicitly found the principles of Trans-Bay and Silberblatt to be "sound." 703 F.2d 895. Moreover, HUD benefitted in the instant case from the provision of utility services just as directly as it benefitted from the construction work in Silberblatt. Had Niagara Mohawk ceased to provide utilities to Mulberry, the tenants would have inevitably failed to pay rents, thus hastening Mulberry's insolvency and increasing HUD's financial exposure. We find, therefore, that the government states a distinction without a difference.
 
 
 11
 It is true that Silberblatt creates a rather novel theory of unjust enrichment. The contractor in that case was fully aware that the advancing of mortgage proceeds depended upon the project's ability to make the required payments and that it could not look to a lien upon the structure to secure payment for its performance. Silberblatt, 608 F.2d 40. The contractor was also well aware before entering into the construction contract that HUD earnestly hoped to shield itself from any liability to it, the contractor. Id. at 33. The contractor was in no way misled and had no reasonable expectation that HUD would pay for its uncompensated services. Nevertheless, we held that "justice would dictate that the rather transparent veil created by HUD be pierced to permit a decision based on substance rather than form." Id. at 40. We are bound by that holding.[1]
 
 
 12
 We need not reach the question of whether the Project Improvement Account at Bankers Trust included a sum earmarked for utility payments and whether Niagara Mohawk's recovery is limited to the earmarked sum. Silberblatt held that the contractor could recover even though it had not acted with a reasonable expectation of receiving payment from HUD and that its recovery was not limited to the undisbursed proceeds of the mortgage that was to have provided funds for paying the contractor. Niagara Mohawk's recovery thus does not depend upon whether some portion of the account at Bankers Trust was earmarked for it.
 
 
 13
 Niagara Mohawk may thus pursue a quantum meruit claim based on services rendered to Mulberry that enriched HUD. In view of this holding, HUD's various arguments relating to whether it owns the Project Improvement Account or to restrictions on its use need not be addressed.
 
 
 14
 Although the parties appear to agree on the facts material to our disposition of this case, it has been briefed and argued simply as an appeal from the grant of summary judgment to the government. We do not direct, therefore, that judgment be entered for Niagara Mohawk but rather that the utility be allowed on remand to renew its previously denied motion for summary judgment. At that time, the district court can determine whether material facts are disputed.
 
 
 15
 Reversed and remanded for proceedings consistent with this opinion.ON PETITION FOR REHEARING
 
 
 16
 In its petition for rehearing, the United States Department of Housing and Urban Development ("HUD") requests that we clarify our opinion with regard to whether "all factual issues, including whether in fact HUD benefited from the provision of utility services," remain open to trial on remand. Appellee's Petition for rehearing at 8. Although we deny the petition, we believe that clarification herein is appropriate.
 
 
 17
 As stated in our opinion, Niagara Mohawk Power Corp. v. Bankers Trust Co., 791 F.2d 242 (2d Cir. 1986), the briefs and arguments of the parties did not address the question of whether material issues of fact were in dispute. We therefore indicated that on remand Niagara Mohawk should renew its motion for summary judgment, and the district court could then determine what, if any, material facts are in dispute. We adhere to that ruling.
 
 
 18
 We add, however, that HUD's Petition for Rehearing appears to assume that the only benefit to HUD from Niagara Mohawk's provision of utility services to the Mulberry Project was the avoidance of foreclosure. It is true that we mentioned the foreclosure problem as a benefit in response to an argument proffered by HUD attempting to distinguish the decision in S.S. Silberblatt, Inc. v. East Harlem Pilot Block, 608 F.2d 28 (2d Cir. 1979). However, we also specifically held that Silberblatt, required us to pierce the veil between HUD and the Mulberry Project. Any benefit to the Mulberry Project from the provision of utility services would, therefore, necessarily be a benefit to HUD.
 
 
 19
 The petition for rehearing is denied.
 
 
 
 [1]
 As stated in Trans-Bay, 551 F.2d at 377, and approved in Silberblatt, 608 F.2d at 41, this case involves "equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid. The claim of right is dependent on federal common law." The district court erred, therefore, in applying the heightened New York standard for piercing the corporate veil