903 F.2d 114
 C.H. SANDERS CO., INC. and Bristol Construction Corp., a
Joint Venture, Appellees/Cross-Appellants,
v.
BHAP HOUSING DEVELOPMENT FUND COMPANY, INC., and Samuel R.
Pierce, Secretary of Housing and Urban
Development, Defendants,
Samuel R. Pierce, Secretary of Housing and Urban
Development, Appellant/Cross-Appellee.
 Nos. 1016, 1017, Dockets 89-6249, 89-6251.
 United States Court of Appeals,
Second Circuit.
 Argued March 21, 1990.
Decided May 8, 1990.
 
 Frederick Cohen, New York City (John S. Wojak, Jr., and Ross & Cohen, New York, N.Y., on the brief), for appellees C.H. Sanders Co. and Bristol Const. Corp., a Joint Venture.
 Samuel Kirschenbaum, Garden City, N.Y. (Ira Levine, and Kirschenbaum & Kirschenbaum, Garden City, N.Y., on the brief), for appellant Samuel R. Pierce in No. 89-6249.
 Thomas A. McFarland, Asst. U.S. Atty., Brooklyn (Andrew J. Maloney, U.S. Atty., Brooklyn, N.Y., on the brief), for appellant Samuel R. Pierce in No. 89-6251.
 Before TIMBERS, NEWMAN and PRATT, Circuit Judges.
 TIMBERS, Circuit Judge:
 
 
 1
 The defendants in the district court in this action were Samuel R. Pierce, the Secretary of the United States Department of Housing and Urban Development ("the Secretary" or "HUD") and BHAP Housing Development Fund Company, Inc. ("BHAP"), a non-profit corporation organized for the purpose of constructing a facility for the elderly in Brooklyn. The Secretary is the sole appellant/cross-appellee. The plaintiffs in the district court were C.H. Sanders Co., Inc. and Bristol Construction Corp. (collectively "Sanders"), a joint venture; they are the appellees/cross-appellants in this Court.
 
 
 2
 The Secretary appeals from that part of a judgment entered September 25, 1989, in the Eastern District of New York, I. Leo Glasser, District Judge, which granted Sanders' motion for summary judgment on its first cause of action which sought foreclosure of a mechanic's lien filed by Sanders. The judgment also denied the Secretary's motion for summary judgment which would have dismissed Sanders' entire complaint. Sanders cross-appeals from that judgment to the extent that it denied Sanders' motion for summary judgment on its second cause of action which sought direct enforcement of an arbitration judgment against HUD and granted the Secretary's cross-motion for dismissal of that claim for lack of subject matter jurisdiction.
 
 
 3
 On appeal, HUD claims that granting summary judgment on the lien foreclosure claim is error due to several outstanding issues of material fact and due to the court's flawed construction of the New York Lien Law. On cross-appeal, Sanders claims that, not only is there federal subject matter jurisdiction over the second cause of action relating to the arbitration award, but that HUD has consented to the suit in the district court.
 
 
 4
 For the reasons which follow, we affirm on HUD's appeal which relates to the lien foreclosure claim, and we reverse and remand on Sanders' cross-appeal which relates to enforcement of the arbitration judgment.
 
 I.
 
 5
 We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 6
 This action arises out of the construction and renovation of a federally funded housing project known as the Brooklyn Home for Aged People ("the Project"), located at 1095 St. John's Place, Brooklyn, New York, which BHAP owned. BHAP is essentially a non-profit, assetless, community organization organized specifically for the Project. It obtained funding for the Project from HUD under Sec. 202 of the National Housing Act, 12 U.S.C. Sec. 1701q (1988), pursuant to which HUD agreed to provide a low-cost mortgage in the amount of $4,364,100. In return, HUD received a security interest in the property and retained substantial control over the Project. To implement their agreements, on or about December 14, 1981 BHAP and HUD executed a building loan agreement, building loan mortgage, and mortgage note and regulatory agreement.
 
 
 7
 That same day, simultaneous with the execution of the agreements referred to above, BHAP entered into a construction contract ("the Agreement") with Sanders as general contractor, under which Sanders agreed to furnish all services and materials necessary to complete the Project. The Agreement, which was prepared by HUD, required that all claims and disputes be resolved by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Although the Secretary was not a party to the Agreement, HUD was given substantial control over the Project, including the right to interpret the Agreement itself and "to determine compliance therewith." In addition, BHAP agreed to use HUD forms as a condition for obtaining the HUD mortgage loan.
 
 
 8
 Sanders worked on the project for several years, although the actual date that it halted work is unclear. In any event, on January 17, 1986, Sanders requested arbitration, claiming that BHAP breached the Agreement. Sanders sought to recover $1,848,010 claimed to be due under the Agreement, representing a contract balance ($212,045), extra work performed at the request of BHAP ($121,353), and additional costs for labor and materials furnished to the Project. BHAP counterclaimed for $1,974,506.94, claiming that the work performed by Sanders was inadequate and defective. On January 21, 1986, Sanders filed a Notice of Mechanic's Lien in the amount of $1,161,528 in the Kings County clerk's office, pursuant to N.Y.Lien Law Sec. 3 et seq. (McKinney's 1966).
 
 
 9
 Sanders could not compel HUD to submit to arbitration as HUD was not formally a party to the contract. Prior to the arbitration hearings, however, by letters dated August 26, 1986, October 8, 1986, and November 6, 1986, counsel for Sanders advised HUD of the scheduled hearings and requested HUD's participation therein, stating that HUD could be held liable for any arbitration award rendered against BHAP. HUD declined. It stated that it considered the arbitration to be "essentially a private dispute" between BHAP and Sanders.
 
 
 10
 On April 23, 1987, after six hearings, the arbitrators found for Sanders and awarded $406,000, plus interest from April 1, 1985. In a decision dated October 1, 1987, the New York Supreme Court confirmed the award, which totaled $502,328.86 with interest and costs.
 
 
 11
 In November 1987, Sanders commenced the instant action. The complaint alleged two causes of action. The first sought foreclosure of Sanders' mechanic's lien in the amount of the arbitration award, claiming priority over HUD's mortgage because of HUD's admitted failure to comply with the provisions of the lien law. The second cause of action sought direct enforcement of the arbitration award against HUD, claiming that, since BHAP was organized as a "shell" corporation without assets, HUD was liable under general equitable principles.
 
 
 12
 On April 8, 1988, Sanders moved for summary judgment on the ground that there were no genuine issues of material fact relevant to the disposition of either cause of action. HUD cross-moved for summary judgment, seeking dismissal of both causes of action. By a separate cross-motion, HUD sought dismissal of the second cause of action on the ground that the district court lacked subject matter jurisdiction.
 
 
 13
 On July 20, 1989, the district court granted summary judgment in favor of Sanders on the first cause of action, holding that Sanders was entitled to foreclose on its lien in the amount of the arbitration award as confirmed. It based its decision on its finding that BHAP in effect was HUD's alter ego.
 
 
 14
 The court dismissed the second cause of action, holding that it lacked subject matter jurisdiction to entertain Sanders' direct claim against HUD.
 
 
 15
 This appeal followed.
 
 II.
 
 16
 We turn first to the question whether the district court erred in dismissing Sanders' second cause of action for lack of subject matter jurisdiction. At the outset, we observe that an action against the sovereign is properly before the district court only if there was both a grant of subject matter jurisdiction and a valid waiver of sovereign immunity. Falls Riverway Realty v. City of Niagara Falls, 754 F.2d 49, 54 (2 Cir.1985); S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Housing Development Fund Co., 608 F.2d 28, 35 (2 Cir.1979). We consider these issues separately.
 
 
 17
 (A)
 
 
 18
 We must determine whether the district court had subject matter jurisdiction to consider Sanders' second cause of action for direct enforcement against HUD of the state court judgment which confirmed the arbitration award. Sanders contends that the district court had "federal question" jurisdiction pursuant to 28 U.S.C. Sec. 1331 (1988). It asserts that enforcement of the judgment claim "arises under" Sec. 202 of the National Housing Act, 12 U.S.C. Sec. 1701q (1988), and requires the application of federal common law. We agree.
 
 
 19
 Our analysis begins with the substance of Sanders' second cause of action. Sanders sought a monetary recovery from HUD in the amount of the state court judgment on the ground that, since HUD was liable for the debts of its assetless creation (BHAP), it was bound by the award rendered in the arbitration proceeding between BHAP and Sanders. Under federal common law, Sanders contended, it had "equitable rights generated by HUD's course of activities pursuant to federal statutes, including the contracts it has sponsored, and prescribed for others, as a condition of federal aid." Trans-Bay Engineers and Builders, Inc. v. Hills, 551 F.2d 370, 377 (D.C.Cir.1976).
 
 
 20
 The district court granted the Secretary's motion to dismiss the enforcement claim, holding that it lacked subject matter jurisdiction. The court correctly rejected 12 U.S.C. Sec. 1702 as a basis for subject matter jurisdiction over the enforcement claim. Section 1702, as the court observed, is only a waiver of sovereign immunity and not an independent grant of jurisdiction. Mundo Developer, Ltd. v. Wicklow Associates, 585 F.Supp. 1324, 1327 & n. 6 (S.D.N.Y.1984) (citing cases). In considering federal question jurisdiction under 28 U.S.C. Sec. 1331, however, the court merely stated that we have declined to follow the "equitable rights" theory embraced by the D.C. Circuit in Trans-Bay, supra, 551 F.2d at 370. See Falls Riverway, supra, 754 F.2d at 54 n. 3 (declining to follow this "vague formulation"). But our analysis does not end there.
 
 
 21
 The gist of Sanders non-contractual claim is that HUD failed in its duties under 12 U.S.C. Sec. 1701q, and as a result was unjustly enriched. Restitution for unjust enrichment is not provided by federal statute. Its availability is part of the federal common law relating to statutory violations. Silberblatt, supra, 608 F.2d at 37; Trans-Bay, supra, 551 F.2d at 381. While a "vague formulation" of equitable rights alone will not confer subject matter jurisdiction, Falls Riverway, supra, 754 F.2d at 54 n. 3, that is not the case here. Rather, Sanders, "simply by alleging a cause of action, not patently frivolous on its face, that purportedly arises under a federal statute, ha[s] made allegations sufficient to sustain subject matter jurisdiction in the district court." Id.; see also Bell v. Hood, 327 U.S. 678, 682 (1946).
 
 
 22
 Although we have declined to follow Trans-Bay's "equitable rights" theory to invoke federal question jurisdiction, Falls Riverway, supra, 754 F.2d at 54 n. 3, we have permitted the assertion of quantum meruit claims against HUD where the plaintiff was in privity with only the HUD-assisted shell corporation and where subject matter jurisdiction otherwise was present. Silberblatt, supra, 608 F.2d at 37 (citing Trans-Bay ); see also Niagara Mohawk Power Corp. v. Bankers Trust Co. of Albany, N.A., 791 F.2d 242, 244-45 (2 Cir.1986) (applying Silberblatt ). In Silberblatt, since jurisdiction was predicated on the federal defendant removal statute, 28 U.S.C. Sec. 1442(a)(1) (1988), we found it unnecessary to address the question whether there was jurisdiction under Sec. 1331. Our decision in Silberblatt, however, makes clear that Sanders' claim based on unjust enrichment is plausible and thus is sufficient to invoke federal question jurisdiction.
 
 
 23
 We hold that the district court had federal question jurisdiction over Sanders' second cause of action, arising under federal common law and the statute authorizing the loan. 12 U.S.C. Sec. 1701q.
 
 
 24
 (B)
 
 
 25
 We turn now to the question, not reached by the district court, whether HUD has consented to suit in the district court. Specifically, the question is whether the Tucker Act, 28 U.S.C. Secs. 1346, 1491 (1988), displaces an otherwise valid exercise of federal question jurisdiction in the district court and places jurisdiction over Sanders' direct claim against HUD exclusively in the United States Claims Court. The Secretary's contention on Sanders' cross-appeal is that it does.
 
 
 26
 The Tucker Act provides both subject matter jurisdiction and sovereign immunity for non-tort claims "against the United States ... founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States." Sec. 1346(a)(2). On its face, the Tucker Act permits such actions in the district courts only when the amount sought is $10,000 or less. Id. The Claims Court, however, may entertain such actions without regard to the amount in controversy. Sec. 1491(a)(1). The Secretary reads this statutory scheme to place exclusive jurisdiction over Sanders' enforcement of judgment claim in the Claims Court. We disagree. We hold that an action (regardless of the amount sought) may be commenced under Sec. 1331 in the district court provided there is an independent waiver of sovereign immunity outside the Tucker Act.
 
 
 27
 The Tucker Act does not expressly state that the jurisdiction of the Claims Court is exclusive. We find that omission significant. In reaching our decision, we find support in the analysis in Ghent v. Lynn, 392 F.Supp. 879 (D.Conn.1975) (Newman, J.). Judge Newman explained the simple reason many courts have held that actions against the government for an amount above $10,000 are within the exclusive jurisdiction of the Claims Court:
 
 
 28
 "Most claimants against the government rely on the Tucker Act for the waiver of sovereign immunity that would otherwise preclude their suits. When such a claimant attempts to sue in a district court ... he encounters the Tucker Act's $10,000 maximum, and his claim therefore fails as an unconsented suit against the sovereign. Hence it is commonly said that suits against the government for more than $10,000 are in the exclusive jurisdiction of the Court of Claims.... In fact, the jurisdiction of the Court of Claims is not exclusive; rather, there is rarely any statute available that waives sovereign immunity for suits in the district court, other than the Tucker Act with its $10,000 limit."
 
 
 29
 Id. at 881 (citations omitted) (emphasis added); see also Falls Riverway, supra, 754 F.2d at 55 n. 4 (agreeing with this aspect of the Ghent analysis). In other words, the Tucker Act provides merely one limited waiver of sovereign immunity. If Sanders were relying on the grant of jurisdiction provided by the Tucker Act, it would encounter the $10,000 limitation on actions commenced in district courts and its enforcement of the judgment claim necessarily would fail. Sec. 1346(a)(2). Since we have held that the district court has Sec. 1331 jurisdiction over Sanders' claim, however, it may be asserted in the district court provided there is an independent waiver of sovereign immunity outside of the Tucker Act.
 
 
 30
 Our decisions in B.K. Instrument, Inc. v. United States, 715 F.2d 713 (2 Cir.1983), and Estate of Watson v. Blumenthal, 586 F.2d 925 (2 Cir.1978), relied upon by the Secretary, do not change our analysis. In Watson, we said that jurisdiction of the Claims Court over plaintiff's contract claim was exclusive, but we were careful to say "on these facts exclusive." 586 F.2d at 929. That is because, other than the Tucker Act, no other statute waived sovereign immunity. In B.K. Instrument, we dealt with the question whether the 1976 amendment to the Administrative Procedure Act ("APA"), 5 U.S.C. Sec. 702 (1988), constituted a waiver of sovereign immunity. We held that it did. 715 F.2d at 724-25. That provision provided, however, that, if "any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought," the waiver would be inapplicable. We then considered whether plaintiff's action could have been brought in the Claims Court and concluded it could not. Id. at 726-27. Within that context, Judge Friendly suggested in dictum that the combination of Sec. 1491(a)(1) and Sec. 1346(a)(2) "could well be considered an implied proscription" against bringing a suit in the district court that could have been brought in the Claims Court. Id. at 726. He suggested this only as an arguable position. Accordingly, we find that B.K. Instrument, which considered only the claim that Sec. 702 of the APA waived sovereign immunity, does not control here.
 
 
 31
 (C)
 
 
 32
 We next must determine whether there was a waiver of sovereign immunity by HUD outside of the Tucker Act. Sanders suggests two sources. We need address only one.
 
 
 33
 Section 1701q, the statute which confers subject matter jurisdiction in this action, vests in the Secretary "the functions, powers, and duties set forth in section 402 of the Housing Act of 1950." Sec. 1701q(b). Section 402 contains a "sue and be sued" clause. Originally Sec. 402 was codified at 12 U.S.C. Sec. 1749a. In 1986 the section (which relates to a college housing loan program) was transferred to the Education title of the United States Code. The "sue and be sued" clause is now located at 20 U.S.C. Sec. 1132g-1(c)(2) (1988).
 
 
 34
 The fact that Sec. 402 was transferred is not relevant to our holding. Indeed, even had Sec. 402 been repealed subsequent to its incorporation in Sec. 1701q(b), that repeal would be irrelevant absent any indication by Congress that its action was intended to alter the remaining statute as well. Hassett v. Welch, 303 U.S. 303, 314 (1938).
 
 
 35
 We hold that the Secretary's immunity to suit in the district court has been waived.
 
 
 36
 (D)
 
 
 37
 We remand this second cause of action to the district court for a determination of the merits. In addition to the foregoing, we suggest one further instruction. If the court determines that HUD is liable for the arbitration award, it need not engage in a further analysis of the source of the funds that would be used to satisfy its judgment--i.e., from general Treasury funds or funds within the discretion and control of the Secretary. The court should simply direct the Secretary to satisfy the judgment out of funds that are within his control, assuming, of course, that such funds exist. It is only as to such funds that the Secretary's immunity has been waived. See F.H.A. v. Burr, 309 U.S. 242, 250-51 (1940); Silberblatt, supra, 608 F.2d at 36.
 
 III.
 
 38
 This brings us to the lien cause of action. In contrast to the enforcement cause of action, there is no serious dispute here that there is both subject matter jurisdiction and waiver of immunity. 28 U.S.C. Sec. 2410 (1988). We address briefly HUD's various arguments in support of its contention that the district court erred in permitting Sanders to foreclose on its mechanic's lien.
 
 
 39
 HUD asserts that there are genuine issues of material fact as to the elements necessary to establish a valid mechanic's lien. It argues that summary judgment was improper because its defenses were based in part on documentary evidence in Sanders' possession. It fails to demonstrate, however, that such evidence would change the result. Its assertions are merely conclusory and must be rejected. Section 10 of the Lien Law requires that a mechanic's lien be filed within eight months from the date the lienor last furnished materials. This provision has been construed to include remedial work if done pursuant to the contract, but not if done pursuant to a later guarantee to repair. Since there was no such guarantee, Sanders' work, which continued at least until June 5, 1985, ended less than eight months prior to the January 21, 1986 filing date.
 
 
 40
 HUD also asserts that the lien is invalid because Sanders intentionally exaggerated its amount when it was filed. In New York, merely filing a lien that is greater than the eventual judgment will not invalidate the lien; the lienor must know that the amount is false and must intend to exaggerate. Howdy Jones Constr. Co. v. Parklaw Realty, Inc., 76 A.D.2d 1018, 429 N.Y.S.2d 768 (3 Dep't 1980), aff'd, 53 N.Y.2d 718, 439 N.Y.S.2d 354, 421 N.E.2d 846 (1981). In this light, HUD's proof fails even to hint at willfulness.
 
 
 41
 HUD makes an assertion that relates to the preceding cause of action; i.e., whether HUD is bound by the arbitration award and therefore by the lien. The district court's holding that HUD is bound by both is correct. HUD is collaterally estopped from challenging the award. In New York, collateral estoppel requires (1) identity of issues in the two proceedings, and (2) that the party sought to be estopped had a full and fair opportunity to contest the prior determination. Kaufman v. Eli Lilly and Co., 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584, 588, 482 N.E.2d 63, 67 (1985). With respect to the first prong, it is clear that the issue is identical: liability under the building contract. With respect to the second prong, a party will be bound if the issue previously was contested vigorously by its privy. Gramatan Home Investors Corp. v. Lopez, 46 N.Y.2d 481, 486, 414 N.Y.S.2d 308, 311, 386 N.E.2d 1328, 1331 (1979). The district court not only found that HUD and BHAP were in privity, but that they were alter egos. This was based on earlier decisions that held similarly with respect to HUD control of assetless, non-profit shell corporations. E.g., Niagara Mohawk Power Corp. v. Bankers Trust Co., 791 F.2d 242, 245 (2 Cir.1986); Silberblatt, supra, 608 F.2d at 40-41.
 
 
 42
 Since HUD was aware of the possibility of arbitration (and indeed demanded it by requiring that the contract form be one pre-printed by HUD) and repeatedly was given notice of the arbitration as well as an invitation to participate, the doctrine of "vouching-in" also serves to bind HUD. Fidelity and Deposit Co. v. Parsons & Whittemore Contractors Corp., 48 N.Y.2d 127, 131-32, 421 N.Y.S.2d 869, 871-72, 397 N.E.2d 380, 383 (1979) (where alter ego is aware of arbitration clause and has notice of proceedings, it can be bound). To the extent that the rule in SCAC Transport (USA), Inc. v. S.S. "Danaos", 845 F.2d 1157 (2 Cir.1988), differs, we find it inapplicable. The basis of jurisdiction in SCAC Transport apparently was admiralty. In any event, the opinion does not purport to invoke New York law.
 
 
 43
 HUD further asserts that the contract in question is one "for public improvement" under the Lien Law. In New York, mechanic's liens are not valid as against real property that is the subject matter of such contracts. HUD asserts this claim for the first time on appeal. We " 'will not reverse a summary judgment on the basis of arguments not presented below unless our failure to do so will result in a possible miscarriage of justice.' " Republic Nat'l Bank v. Eastern Airlines, Inc., 815 F.2d 232, 240 (2 Cir.1987) (quoting Radix Org. v. Mack Trucks, Inc., 602 F.2d 45, 48 (2 Cir.1979)). Since there is no reason that HUD could not have raised this defense in the district court, there is no miscarriage of justice. In any event, BHAP does not appear to be a "public benefit corporation" within the meaning of New York law, since its profits, if any, do not inure to the state or its citizens--a prerequisite to enjoying protection from mechanic's liens on real property.
 
 IV.
 To summarize:
 
 44
 We reverse the judgment of the district court to the extent that it held that it did not have subject matter jurisdiction over the cause of action which sought to enforce the arbitration award against HUD. We hold that the court did have jurisdiction and that HUD waived its immunity to suit. We therefore remand that cause of action to the district court for a determination of the merits of Sanders' claim.
 
 
 45
 We affirm the judgment of the district court to the extent that it held that Sanders was entitled to foreclose its mechanic's lien against HUD.
 
 
 46
 Affirmed in part; reversed and remanded in part.