**WESTERN SECURITIES COMPANY, A SUBSIDIARY OF UNIVERSAL MORTGAGE CORPORATION, Plaintiff–Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Defendant–Appellee.**

No. 90–3052.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1991.

Decided July 25, 1991.

Dean B. Richards, Thomas L. Jacobs, George A. Coulter, Gray & End, Milwaukee, Wis., for plaintiff-appellant.

James L. Santelle, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, Wis., for defendant-appellee.

Before POSNER, FLAUM, and EASTERBROOK, Circuit Judges.

POSNER, Circuit Judge.

Western Securities Company made a $73,000 home mortgage loan to a veteran in 1980. The Veterans' Administration (now the Department of Veterans Affairs) guaranteed a portion of the loan. The veteran later sold the property to Becky Shaw, who resold it to a couple who defaulted on the mortgage. Western notified the Veterans' Administration of intention to foreclose on the mortgage. The Administration responded by notifying Western that Western was not to forgo seeking deficiency judgments against any persons who were liable on the mortgage note. Western's letter was dated October 2 and the Veterans' Administration's response October 23, but we do not know when either letter was actually mailed or received.

It was not until February of the following year that Western instructed its attorney to foreclose on the mortgage and to seek any other relief that might be obtainable. Included in the packet of documents that it transmitted to the attorney was the Veterans' Administration's letter of October 23. The attorney decided, however, that Shaw had not assumed the mortgage when she bought the property and therefore was not liable on the note, and so rather than seek a deficiency judgment against her he released her from liability.

The foreclosure sale resulted in a loss to Western, which then turned to the Veterans' Administration to make good on its guaranty. The Administration refused, citing a regulation it has promulgated which provides that "the release of the personal liability of any obligor on a guaranteed or insured obligation resultant from the act or omission of any holder [of the guaranty] without the prior approval of the [Veterans'] Administrator shall release the obligation of the Administrator as guarantor or insurer." 38 C.F.R. § 36.4324(f). Western sued the Administrator in state court under 38 U.S.C. § 1820(a)(1) for $25,002, the amount of money Western allegedly had lost as a result of the refusal to honor the loan guaranty. The suit claimed that Shaw was not an obligor on the loan and that, in any event, the defense based on the regulation was barred by the Administration's failure to have notified Western, within fifteen days of being informed that Western intended to foreclose, of the Administration's desire that Western preserve personal liability on the mortgage note. For the regulation from which we quoted makes an exception to the release of the Administrator if, "after receiving [the required] notice, the Administrator shall have failed to notify the holder within 15 days to proceed in such manner as to effectively preserve the personal liability of the parties liable." The Veterans' Administration concedes that it missed the deadline by six days. The concession is a bit curious, since the record contains no evidence either of when Western's notice was received, which would have started the Veterans' Administration's clock running, or of when the Veterans' Administration's response was mailed, which by analogy to notification requirements in other commercial settings would have stopped the clock. See UCC § 1–201(26) and Official Comment 26. It is not the only curiosity in the case.

■ The Administrator removed the case to federal court under 28 U.S.C. § 1442(a)(1) (removal by federal officer), producing a host of questions that the parties did not address in their original briefs but that in response to our request have addressed in supplementary briefs. The first question is whether the suit really was removable under section 1442(a)(1). Suits against federal agencies are not, *International Primate Protection League v. Administrators of Tulane Educational*

*Fund,* —— U.S. ——, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991), and while the suit in this case is nominally against the Administrator, it is against him in his official capacity and such suits are considered to be against the government itself. *Loeffler v. Frank,* 486 U.S. 549, 562 n. 8, 108 S.Ct. 1965, 1973 n. 8, 100 L.Ed.2d 549 (1988); *General Railway Signal Co. v. Corcoran,* 921 F.2d 700, 704–05 (7th Cir.1991); *Duckworth v. Franzen,* 780 F.2d 645, 649 (7th Cir.1985). Western did not object to the removal of the suit, however, and, ordinarily, objections to removal are waived unless made within thirty days. 28 U.S.C. § 1447(c); *Johnson v. Burken,* 930 F.2d 1202, 1206 (7th Cir.1991). But that is provided the court to which the case was removed had subject-matter jurisdiction. For the thirty-day rule is applicable only to "defect[s] in removal procedure," 28 U.S.C. § 1447(c); *State v. Ivory,* 906 F.2d 999, 1000 n. 1 (4th Cir.1990), and the absence of subject-matter jurisdiction, if it becomes apparent at any time before appellate remedies have been exhausted, requires that the case be dismissed, whether or not there has been an objection. *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 16–18, 71 S.Ct. 534, 541–42, 95 L.Ed. 702 (1951); *Wiggens v. North American Equitable Life Assurance Co.,* 644 F.2d 1014, 1018 (4th Cir.1981). The second point is fundamental, not the first. If a case is removed to a court that has original jurisdiction over the type of case, and no objection to removal is lodged, it is as if the plaintiff had sued in federal district court in the first place.

 So we must consider whether the federal district court had original jurisdiction. At first glance the answer is a resounding "no." Western has a contract claim against the United States for more than $10,000, and the jurisdiction of federal district courts over such claims is limited to claims that do not exceed that amount, the larger claims being within the jurisdiction not of the district courts but of the Claims Court, in Washington. Tucker Act, codified at 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); *Lomas & Nettleton Co. v. Pierce,* 636 F.2d 971 (5th Cir.1981); *Garrett v. United States,* 15 Cl.Ct. 204, 206 (1988). Section

1491(a)(1) confers jurisdiction on the Claims Court; section 1346(a)(2), enacted separately and sometimes referred to as the "little Tucker Act," confers concurrent jurisdiction on the district courts, provided the claim does not exceed $10,000. *Preseault v. ICC,* 494 U.S. 1, 110 S.Ct. 914, 920, 108 L.Ed.2d 1 (1990); see generally *United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 952–53, 47 L.Ed.2d 114 (1976).

 It is true that 38 U.S.C. § 1820(a)(1) empowers the Veterans' Administrator to sue or be sued in any court, state or federal, of competent jurisdiction. It was under the authority of that statute that Western filed this suit—in state court, remember—initially. But that statute, in contrast to 15 U.S.C. § 634(b)(1), construed in *General Railway Signal Co. v. Corcoran, supra,* 921 F.2d at 705–06, is better read as a waiver of sovereign immunity than as a grant of jurisdiction. *C.H. Sanders Co. v. BHAP Housing Development Fund Co.,* 903 F.2d 114, 118 (2d Cir.1990). It is true that the statutes which allocate federal jurisdiction over contract claims against the government between the district courts and the Claims Court do not constitute an exclusive or exhaustive grant of jurisdiction over such claims. *Id.* at 119–20. They make clear that the district court was not a court of competent jurisdiction for the adjudication of the claim in this case, but they do not thereby render the state court in which Western filed its suit a court of incompetent jurisdiction. All that this means, however, in conjunction with 38 U.S.C. § 1820(a)(1), which waived the government's sovereign immunity to suit in either federal or state court, is that this suit was properly filed in state court. *Crowel v. Administrator of Veterans' Affairs,* 699 F.2d 347, 350–51 (7th Cir.1983). It emphatically does not mean that it could have been filed in federal district court instead, for federal jurisdiction is statutory and section 1820(a)(1) is not a grant of jurisdiction. And while it is true that the propriety of removal under section 1442(a)(1) would be unaffected by the district court's lack of original jurisdiction, *Poss v. Lieberman,* 299 F.2d 358 (2d Cir.

1962); *Lindy v. Lynn*, 395 F.Supp. 769, 771 (E.D.Pa.1974), aff'd without opinion, 515 F.2d 507 (3d Cir.1975), because the aim of that statute is to guarantee a federal defendant a federal forum whether or not the plaintiff could have selected that forum in the first place, removal by an unauthorized party—a federal agency, as distinct from a federal officer sued in his individual capacity—does not appear to be a mere defect in the procedure for removal. It is tempting to suppose that we might transfer the case to the Claims Court under 28 U.S.C. § 1631 (transfer between federal courts to cure want of jurisdiction), but this route may be foreclosed by the provision of section 1447(c) that a case which has been improperly removed "shall be remanded" to the court from which it was improperly removed, which in this case is the state court.

▆▆▆▆ We need not pursue these questions. Jurisdiction is saved by the fact that Western's suit, being a suit against the Veterans' Administration to enforce the loan guaranty, arises under federal law and is therefore within the original jurisdiction of the federal district court by virtue of 28 U.S.C. § 1331 (the general federal-question jurisdictional statute), making objection to removal waivable. Suits to enforce contracts with federal agencies are governed by federal common law, *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); *Priebe & Sons, Inc. v. United States*, 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947); *Price v. Pierce*, 823 F.2d 1114, 1119–20 (7th Cir.1987); *Falls Riverway Realty, Inc. v. City of Niagara Falls*, 754 F.2d 49, 55 n. 4 (2d Cir.1985); *Lawrence v. United States*, 378 F.2d 452, 461 (5th Cir. 1967); *McDonald v. United States*, 13 Cl.Ct. 255, 260 (1987); cf. *Miree v. DeKalb County*, 433 U.S. 25, 28–31, 97 S.Ct. 2490, 2493–95, 53 L.Ed.2d 557 (1977), and as a result arise under federal law for purposes of section 1331. *Illinois v. City of Milwaukee*, 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972); *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 988 (4th Cir.1990). It is true that in determining what particular doctrine to apply in a particular suit, the court will

often select a rule of state law. *United States v. Yazell*, 382 U.S. 341, 86 S.Ct. 500, 15 L.Ed.2d 404 (1966); *Powers v. U.S. Postal Service*, 671 F.2d 1041, 1043–44 (7th Cir.1982). But that determination is itself an interpretation of federal common law: a determination that, for this particular case, the federal common law rule shall be state-law rule thus-and-so. *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979); *Powers v. U.S. Postal Service, supra*, 671 F.2d at 1043.

▆▆▆▆ The Veterans' Administration loan-guaranty program, 38 U.S.C. §§ 1801 *et seq.*, empowers the federal courts to create in common law fashion such interpretive, suppletive, and interstitial principles as may be necessary to the sound administration of the program, cf. *Powers v. U.S. Postal Service, supra*, 671 F.2d at 1043, and whether the courts do this by creating new principles of law or by borrowing existing principles of state law, the resulting body of law is federal for purposes of jurisdiction. It is this body of law that Western invoked in suing to enforce the guaranty. This would be true whether or not Western acknowledged it, but in fact its complaint states that the "plaintiff's cause of action herein arises under the Veterans' Administration's failure to pay a mortgage guaranty claim arising under its home loan guaranty program, 38 U.S.C. Section 1801 et seq." The "sue or be sued" clause, 38 U.S.C. § 1820(a)(1), operates as the necessary waiver of sovereign immunity, permitting the suit to go forward notwithstanding that it is a suit against a federal agency. These two elements—claim arising under federal law, and waiver of sovereign immunity—would have entitled Western to bring this suit in the district court in the first place. *C.H. Sanders Co. v. BHAP Housing Development Fund Co., supra*, 903 F.2d at 118–20; *Falls Riverway Realty, Inc. v. City of Niagara Falls, supra*, 754 F.2d at 55 n. 4; *Trans-Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370, 377–78 (D.C.Cir.1976).

We do not think it should be objected that this interpretation of section 1331 disrupts the allocation of jurisdiction between

the district courts and the Claims Court. That allocation is the creation of the Tucker Act, which waives sovereign immunity for contract claims against the government that are not waived by other statutes. *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983). Here we have another statute.

So we have jurisdiction. But we invite Congress's attention to the hole that *Primate Protection League* has made in the consistent congressional policy of allowing the federal government to insist that suits against it be litigated in federal court because state courts might be tempted to treat the U.S. Treasury as the ultimate deep-pocket litigant. As a result of the interaction between 38 U.S.C. § 1820(a)(1) and *Primate Protection League,* the government can no longer remove a suit against the Department of Veterans Affairs under 28 U.S.C. § 1442(a)(1). This is not a problem in a case like this which arises under federal law, because such a suit is removable under section 1441, which was unaffected by *Primate Protection League.* But it cannot be assumed that all suits against the Veterans' Administration will arise under federal law.

■ We come at last to the merits. After a bench trial that, pursuant to agreement of the parties, was limited to documentary evidence, the district court held that Shaw was indeed an obligor and that while the Veterans' Administration had violated the regulation by missing the fifteen-day deadline, Western could not complain, because the violation had not harmed it. In our court, Western does not challenge the holding that Shaw was an obligor. Nor does it contend that it was harmed by the fact that the Veterans' Administration missed the deadline. It could not argue that. It did not release Shaw until many months after it had received the Veterans' Administration's untimely notification to preserve personal liability. Its lawyer had the Administrator's notification in hand when he released Shaw; he just thought, erroneously as it turned out, that Shaw wasn't liable. There was no causal connection between the delay in notification and the release of the obligor and consequent release of the Veterans' Administration's guaranty.

■ Yet the regulation, read literally, conditions the release of the Veterans' Administration's guaranty on the Administration's making timely notification of its desire that personal liability be preserved, and timely is defined as fifteen days. The literal interpretation of the regulation would result, however, in a grossly excessive sanction for inevitable if regrettable bureaucratic ineptitude. Sanctions should be proportioned to the gravity of the misconduct, *Lorenzen v. Employees Retirement Plan*, 896 F.2d 228, 232–33 (7th Cir. 1990); *Okaw Drainage District v. National Distillers & Chemical Corp.*, 882 F.2d 1241, 1248 (7th Cir.1989); *United States v. Carlone*, 666 F.2d 1112 (7th Cir.1981), and that should make us wary of imposing sanctions on misconduct that causes no harm. (We abstract from situations in which the sanction must be jacked up because violators frequently escape punishment or in which harmless attempts are punished in order to deter and disable malefactors who might not be deterred by the threat of punishment for the completed wrong.) This is not merely the command of retributive justice. It is also the counsel of expedience. Punishment more severe than the wrongdoing that is punished can induce excessive care. If the Veterans' Administration is to lose tens of thousands of dollars as a result of a trivial clerical error that harmed nobody, it may spend tens of thousands of dollars to prevent the recurrence of the error: thousands in costs to produce zero in social benefits, since the error was harmless. Excessive expenditures on care, like excessive expenditures on anything, are socially wasted. We should not be quick to infer an intention on the part of the Veterans' Administration, when it drafted the regulation in issue, to create an incentive for the Administration to be excessively careful, to the detriment of taxpayers and veterans alike. What Western with technical legal accuracy calls a condition, we functionally call a sanction: a costly consequence for an act which in this case hurt no one. The case would be

different if on, say, the twentieth day after notifying the Veterans' Administration of its intention to foreclose, Western, not having heard from the Administration, and ascertaining that the Administration had not notified it that it should preserve personal liability (for we are assuming, remember, that the notice is timely if mailed within fifteen days—it need not be received within that time), had gone ahead and released Shaw. Then, if the Veterans' Administration had later tried to back out of honoring its loan guaranty, the violation of the regulation would have harmed Western, and, as the Assistant U.S. Attorney candidly conceded at oral argument, Western would win. We *want* the Veterans' Administration to expend resources on preventing errors that hurt people.

Case law is replete with instances in which the missing of deadlines, whether by government agencies subject to statutory deadlines or by private parties subject to deadlines set in contracts, does *not* lead to costly forfeitures. A few examples are *Brock v. Pierce County,* 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986); *United States v. Boccanfuso,* 882 F.2d 666, 671 (2d Cir.1989); *Franklin E. Penny Co. v. United States,* 524 F.2d 668, 676, 207 Ct.Cl. 842 (1975); *Aetna Casualty & Surety Co. v. Murphy,* 206 Conn. 409, 412–19, 538 A.2d 219, 221–24 (1988); and see 2 E. Allan Farnsworth, *Farnsworth on Contracts* § 8.7, at pp. 386–88 (1990). An automatic rule of forfeiture would be an excessive penalty in many cases and thus produce an overinvestment of resources in care. There are exceptions to this judicial lenity: some deadlines—many of them statutes of limitations in one form or another, including deadlines for filing appeals—are enforced to the hilt even if great harm results to a party and the other party would not have been harmed by lenity at all. *Browder v. Director,* 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978); *Short v. Belleville Shoe Mfg. Co.,* 908 F.2d 1385, 1392 (7th Cir.1990); *Parke–Chapley Construction Co. v. Cherrington,* 865 F.2d 907, 908–09 (7th Cir.1989); 2 Farnsworth, *supra,* §§ 8.3, 8.18, at pp. 353, 450. The thinking in such cases seems to be that the interest in certainty and predictability is so great that even heavy forfeitures are not excessive penalties when all the relevant costs and benefits are taken into account. If there is a similar argument for rigid enforcement of the fifteen-day deadline in the Veterans' Administration's regulation, we haven't heard it.

Affirmed.