GENERAL RAILWAY SIGNAL
COMPANY, Plaintiff–Appellee,

v.

James P. CORCORAN, Superintendent of
Insurance of the State of New York, as
Liquidator for American Fidelity Fire
Insurance Company, Defendant–Appel-
lant.

No. 90–1861.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 24, 1990.

Decided Jan. 3, 1991.

Martin M. Ruken, Andrew M. Gardner, Allan E. Lapidus, Stuart D. Kenney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for plaintiff-appellee.

Lori A. Goldstein, William I. Goldberg, Michael A. Berman, Martin H. Redish, Holleb & Coff, Chicago, Ill., for defendant-appellant.

Before CUMMINGS, WOOD, Jr. and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

The plaintiff, General Railway Signal Company ("General Railway"), brought an interpleader action in district court asking the court to decide which of two claimants, James P. Corcoran, the Superintendent of Insurance of the State of New York ("Corcoran") and Liquidator for American Fidelity Fire Insurance Company ("AFFI"), or Susan S. Engeleiter, the Administrator of the United States Small Business Administration ("SBA"), is entitled to the interpled fund. The fund consists of $1,070,000 that an Illinois state court previously decided General Railway owed to the Superintendent. Plaintiff asserted subject matter jurisdiction under the federal interpleader statute, 28 U.S.C. § 1335, and asked the

court to adjudicate the claimants' rights to the fund. After an *ex parte* hearing, it obtained a temporary restraining order enjoining the Superintendent from attempting to collect the Illinois state judgment pending the outcome of the federal court action. 28 U.S.C. § 2361 authorizes the issuance of an injunction when the requirements of Section 1335 are met.

The issue before this Court is whether jurisdiction was properly asserted under Section 1335 so as to support the entry of an injunction under Section 2361. The Superintendent appeals two orders denying his motions to vacate the temporary restraining order. Section 1335 requires complete diversity amongst at least two claimants in the interpleader action. In the Superintendent's view, no diversity exists between the two claimants in this case, the SBA and the Superintendent, because the SBA, as an agency of the United States, is a citizen of no state and therefore cannot be sued in diversity. We agree that this case cannot properly be brought under Section 1335. Because the plaintiff must meet the requirements of Section 1335 to obtain an injunction under Section 2361, we vacate the injunction entered by the district court.

## I.

The underlying facts are easily stated and are not disputed by the parties for the purposes of this appeal. In 1981, AFFI filed suit against General Railway in Illinois state court, claiming that General Railway had breached a contract with Transit Systems Technology, Inc. ("Transtec"). This breach caused AFFI, as surety on two performance bonds given by Transtec and issued in favor of Transtec's clients, to pay $803,500 to Transtec's clients. AFFI sought in state court to recover from General Railway the amounts AFFI had paid to Transtec's clients.

The trial court, after a jury verdict in favor of AFFI, entered judgment for AFFI on February 17, 1987, in the amount of $827,047 plus post-judgment interest. The Appellate Court of Illinois affirmed the judgment on June 9, 1989. *American Fidelity Fire Ins. Co. v. General Railway Signal Co.*, 184 Ill.App.3d 601, 132 Ill.Dec. 817, 540 N.E.2d 557 (1st Dist.), appeal denied, 127 Ill.2d 611, 136 Ill.Dec. 580, 545 N.E.2d 104 (1989).

The SBA had entered into Surety Bond Guarantee Agreements with AFFI in connection with the performance bonds issued by Transtec. In these contracts, the SBA agreed to reimburse AFFI for portions of payments made on the Transtec performance bonds. Under the Surety Bond Guarantee Agreements, the SBA paid $732,872 to AFFI to reimburse AFFI for its payments to Transtec's clients. The agreements also obligated AFFI to pursue all possible sources of recovery. They entitled the SBA to a *pro rata* share of the "net proceeds" of any recovery "within 90 days of actual receipt by the Surety."

Before the Superintendent could collect his judgment from General Railway, the SBA notified General Railway that it was claiming the proceeds of the Illinois state court judgment under its Surety Bond Agreements with AFFI. General Railway filed this interpleader action in federal court on December 19, 1989, asserting that it was subject to multiple liability on the same funds. The sole basis of subject matter jurisdiction identified in the complaint was 28 U.S.C. § 1335. General Railway interpled the SBA and the Superintendent, who had been named liquidator of AFFI after it became insolvent in 1985. General Railway posted a bond of $1,070,000. On the same day it filed this claim, it invoked Section 2361 to obtain an order enjoining the Superintendent from trying to collect the Illinois state court judgment.

The Superintendent appeals from two orders of the district court, dated March 21, 1990, 735 F.Supp. 265, and April 2, 1990, refusing to dissolve the injunction. The SBA is not a party to this appeal.

## II.

The district court entered its injunction against the Superintendent under Section 2361. That section provides:

In any civil action of interpleader or in the nature of interpleader under section

1335 of this title, a district court may issue its process for all claimants and enter its order restraining them from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument, or obligation involved in the interpleader action until further order of the court. 28 U.S.C. § 2361.

Section 2361 enables a plaintiff meeting the requirements of Section 1335 to obtain a restraining order without following the procedures set forth in Fed.R.Civ.P. 65, which normally governs the issuance of injunctive relief. See Fed.R.Civ.P. 65(e) ("These rules do not modify * * * the provisions of Title 28, U.S.C., § 2361."). Section 1335 confers subject matter jurisdiction over an interpleader action when the amount in controversy is $500 or more and the case involves "two or more adverse claimants of diverse citizenship as defined in section 1332 of this title...." 28 U.S.C. § 1335.

The injunction entered by the district court must be vacated because the requirements of Section 1335 have not been met. Susan Engeleiter, who is named as the defendant in her official capacity as administrator of the SBA, is a citizen of no state for diversity purposes.[1]

■ The parties agree that the United States is not a citizen for diversity purposes, *Lummis v. White*, 629 F.2d 397, 402 (5th Cir.1980), reversed on other grounds, 457 U.S. 85, 102 S.Ct. 2325, 72 L.Ed.2d 694, and that agencies of the United States likewise cannot be sued in diversity. *Texas v. Interstate Commerce Commission and Railroad Labor Board*, 258 U.S. 158, 160, 42 S.Ct. 261, 262, 66 L.Ed. 531 (no diversity jurisdiction over ICC and Railroad Labor Board, since they "are not citizens of any State, but have the same relation to one State as to another."); *Koppers Co. v. Garling & Langlois*, 594 F.2d 1094 (6th Cir. 1979) (no diversity jurisdiction over claim against U.S. Department of Housing and Urban Development); *Weeks Construc-*

*tion, Inc. v. Oglala Sioux Housing Authority*, 797 F.2d 668 (8th Cir.1986) (same); *Hancock Financial Corporation v. Federal Savings and Loan Insurance Corporation*, 492 F.2d 1325 (9th Cir.1974) (no diversity jurisdiction over claim against U.S. FSLIC). Federal jurisdiction over a suit against an agency of the United States is proper when, for example, federal questions exist or when the agency chooses to remove a case brought initially in state court against an agency official, see 28 U.S.C. § 1442(a). U.S. agencies cannot be sued in diversity, however.

■ The question is whether this suit, which names agency administrator Susan Engeleiter as defendant rather than the SBA, is equivalent to a suit against the agency or the United States. General Railway cites *Trans–Bay Engineers & Builders, Inc. v. Hills*, 551 F.2d 370 (D.C.Cir. 1976), for the proposition that an agent of the United States, when sued in her official capacity, is considered a citizen of the state in which her agency is located. In *Trans–Bay*, the court held that diversity jurisdiction existed over a claim between Trans–Bay and Carla Hills, then the Secretary of Housing and Urban Development. The court stated that for diversity purposes, Carla Hills resided in the District of Columbia.

*Trans–Bay* itself is devoid of any reasoning which might justify viewing a suit against an agency administrator in her official capacity differently than a suit against the agency itself for diversity purposes. Plaintiff propounds a theory for making such a distinction. 15 U.S.C. § 634(b)(1) provides that "the Administrator may * * * sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court." Plaintiff believes that the statute singles out the Administrator as the prospective litigant to emphasize the "unique independence" (Br. at 4) of the administrator of the SBA, as opposed to administrators of other agencies. Because the Administrator is in-

---

1. The SBA itself does not assert that federal jurisdiction was proper in this case. In its answer to General Railway's complaint, it alleged as an affirmative defense that the district court lacked subject matter jurisdiction over the interpleader action.

dependent even of her own agency, General Railway argues that she should be regarded as a citizen of the District of Columbia, even if her agency is not.

We decline to interpret Section 634(b)(1), which waives sovereign immunity and establishes federal question jurisdiction over contract suits brought by and against the Administrator,[2] to contain any implicit commentary on the propriety of asserting diversity jurisdiction over the SBA. The naming of the SBA administrator rather than the SBA as the party amenable to suit in a statute drafted to waive sovereign immunity cannot be imbued with special significance because, for sovereign immunity purposes, a suit against the Administrator is equivalent to a suit against the SBA. *Mar v. Kleppe*, 520 F.2d 867, 870 (10th Cir.1975) (immaterial for sovereign immunity purposes if SBA or SBA administrator is named as defendant). The same can be said of the HUD statute at issue in the *Trans–Bay* case, 12 U.S.C. § 1702. Section 1702 also says that the Secretary, rather than the agency, is the party that can sue or be sued. But the distinction is unimportant because, for sovereign immunity purposes, a suit for damages against the Secretary in his official capacity is equivalent to a suit against his agency. *Edelman v. Federal Housing Administration*, 382 F.2d 594, 596 (2nd Cir.1967).

The notion in *Trans–Bay* that "[f]or diversity purposes, the Secretary's residence is properly found in Washington, D.C.," 551 F.2d at 376, is not rooted in any reasoned analysis of the proper scope of diversity jurisdiction. In fact, the *Trans–Bay* holding has its genesis in cases that do not involve diversity jurisdiction at all. Instead they answer questions of where agency administrators reside for venue and service of process purposes. The cases cited in the *Trans–Bay* case itself do hold, as *Trans–Bay* did, that agency administrators can be sued in diversity. See *Garden Homes, Inc. v. Mason*, 249 F.2d 71, 73 (1st Cir.1957), certiorari denied, 356 U.S. 903, 78 S.Ct. 562, 2 L.Ed.2d 580 [hereinafter *Garden Homes II*] ("Federal Housing Admin-

istration is to be treated as * * * a citizen of the District of Columbia"); *Emmco Insurance Co. v. Frankford Trust Co.*, 352 F.Supp. 130 (E.D.Pa.1972) (same). However, the *Garden Homes II* and *Emmco* cases improperly cite as authority cases involving the residency of agency administrators for venue and service of process purposes. See *Garden Homes, Inc. v. Mason*, 238 F.2d 651, 653 (1st Cir.1956) [hereinafter *Garden Homes I*] (FHA held to be citizen of Washington, D.C. in case involving appeal from dismissal on grounds of improper service of process on defendant FHA); *Seven Oaks, Inc. v. Federal Housing Administration*, 171 F.2d 947 (4th Cir. 1948) (in case where subject matter jurisdiction existed by virtue of federal question, court held additionally that "an agency should * * * be treated, for purposes of suits against it, as a federal corporation within the meaning of the venue statute which provides that 'a corporation may be sued in any judicial district in which it * * * is doing business.'").

Neither of the cases upon which *Trans–Bay* ultimately relies speaks to the question of whether an agency administrator is a resident of a state for diversity purposes. Questions of service of process and venue are obviously distinct from that of proper subject matter jurisdiction. *Seven Oaks* holds only that if subject matter jurisdiction is otherwise established, the administrator must be amenable to suit in some federal district. *Garden Homes I* stands for the proposition that if subject matter jurisdiction and venue are proper, the administrator must be said to reside in some state so that she can be reached in service of process.

We decline to distinguish agencies from their administrators for the purpose of determining diversity jurisdiction. The *Trans–Bay* case puts forth no reason to consider an agency administrator a resident of the District of Columbia for diversity purposes. In addition, the holding itself mistakenly relies on cases which involve different issues of venue and service of process. The better view is that a suit

---

**2.** See discussion *infra* at 706.

against an agency administrator is equivalent to a suit against the agency. See *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 52 n. 1 (2nd Cir.1985). A contrary holding would undermine the longstanding rule that agencies cannot be citizens of any state for diversity purposes and would arbitrarily expand diversity jurisdiction over instrumentalities of the United States. Plaintiffs could invoke subject matter jurisdiction merely by naming administrators as defendants rather than the agencies themselves.

Since we hold that the SBA is not a resident of the District of Columbia for diversity purposes, there is no diversity between the SBA and the Superintendent, who is a citizen of New York.[3] Plaintiff General Railway improperly asserted jurisdiction under Section 1335 and thus was not entitled to obtain *ex parte* an injunction under Section 2361. The injunction must be vacated.[4]

The interpleader action is not necessarily over, however. General Railway rightly points out that even if the federal interpleader statute is unavailable, it can alternatively pursue its interpleader action under Fed.R.Civ.P. 22(1). Rule 22(1) provides a procedural framework for interpleader actions, but it confers no subject matter jurisdiction on federal courts. *Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir.1982). In Rule 22(1) interpleader actions, jurisdiction must arise from some other federal statute if diversity does not exist amongst the parties. *Id.* If this interpleader action is to proceed under Rule

22(1), General Railway must establish the existence of a federal question.

### III.

■ Ordinarily, "jurisdiction may not be sustained on a theory that the plaintiff has not advanced." *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650. Fed.R.Civ.P. 8(a) imposes on the plaintiff the obligation of providing a district court with "a short and plain statement of the grounds on which the court's jurisdiction depends." The only ground upon which General Railway asserted subject matter jurisdiction in its complaint was Section 1335. On appeal plaintiff contends in addition that federal question jurisdiction is proper. Because "dismissal should be sparingly used whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by plaintiff," *Littleton v. Berbling*, 468 F.2d 389 (7th Cir.1972), reversed on other grounds *sub nom. O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674, we will consider the grounds for jurisdiction plaintiff proposes.

■ It is not necessary to look beyond the first basis for federal question jurisdiction advanced by General Railway, since it provides a valid ground for the exercise of federal jurisdiction. 15 U.S.C. § 634(b)(1) creates specific federal question jurisdiction over contract claims against the SBA.[5] This statute, in pertinent part, provides that the Administrator of the SBA:

---

**3.** Plaintiff suggests that the Superintendent also cannot be a citizen for diversity purposes because he is a New York state official. States cannot be sued as citizens in diversity. *Moor v. County of Alameda*, 411 U.S. 693, 717, 93 S.Ct. 1785, 1799–1800, 36 L.Ed.2d 596. We are satisfied that the real party in interest here is not the state of New York. The Superintendent, though a state official, is acting in a limited capacity as the liquidator of AFFI. The state has no direct stake in the outcome of the interpleader action. The state treasury will not be affected by the suit.

**4.** Because plaintiff relied improperly on Section 1335 to bring this interpleader action, the issue of whether the plaintiff met the bond-posting requirements of Section 1335 becomes moot.

**5.** See 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1209 (2d ed. 1990), in which the authors distinguish general federal question jurisdiction from specific federal question cases. General federal question jurisdiction exists over cases "arising under" the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. Until 1980, Section 1331 required that the amount in controversy in a general federal question case be more than $10,000. Specific federal question cases are cases in which jurisdiction is based on special statutes dealing with particular subjects. Generally, statutes conferring specific federal question jurisdiction were drafted so as to eliminate any amount in controversy requirement.

may sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy.... 15 U.S.C. § 634(b)(1). A "sue and be sued" clause is not necessarily more than a waiver of sovereign immunity. *J.C. Driskill, Inc. v. Abdnor,* 901 F.2d 383, 385 n. 4 (4th Cir.1990) (discussing Section 634(b)(1), "[w]aiver of sovereign immunity is a jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction."). Section 634(b)(1), however, has been interpreted as a grant of subject matter jurisdiction as well as a waiver of sovereign immunity. *Mar v. Kleppe,* 520 F.2d 867 (10th Cir.1975); *Expedient Services, Inc. v. Weaver,* 614 F.2d 56 (5th Cir.1980); *Munoz v. Small Business Administration,* 644 F.2d 1361 (9th Cir. 1981).

We align ourselves with the Circuits that have previously considered the question. Section 634(b)(1) is most reasonably read to create federal question jurisdiction over contract claims against the SBA because of the interaction of Section 634(b)(1) with a provision of the Tucker Act, 28 U.S.C. § 1346(a)(2). Section 1346(a)(2) gives district courts concurrent jurisdiction with the Court of Claims over civil actions against the United States, not exceeding $10,000 in amount and founded upon any express or implied contract. If Section 634(b)(1) were not interpreted to grant jurisdiction over similar cases in which the amount in controversy was over $10,000, suits for over $10,000 could be brought only in state courts or the Court of Claims, while suits in which smaller amounts were at stake could be brought in any federal court. We resist such an anomalous result and hold that Section 634(b)(1) extends federal jurisdiction over contract actions against the SBA for money damages in excess of $10,000.

Because Section 634(b)(1) confers subject matter jurisdiction over this case,[6] General Railway's interpleader action against the Superintendent and SBA can proceed. On remand, General Railway should amend its complaint to state that subject matter jurisdiction is granted by Section 634(b)(1)[7] and that plaintiff interpleads the defendants pursuant to Rule 22(1). Defendants must then have a chance to answer the amended complaint, because the venue and service of process requirements for a Rule 22(1) interpleader action are distinct from those of an action brought under Section 1335. Defendants should be allowed an opportunity to call the district court's attention to any defects in the plaintiff's choice of venue or method of service.

■ Plaintiff undoubtedly will seek another injunction to prevent the Superintendent from collecting his Illinois state court judgment against General Railway. We have ruled that Section 2361, authorizing the entry of restraining orders in Section 1335 actions, is unavailable to the plaintiff. See discussion *supra* at 705. As such, any injunction desired by General Railway must be entered only after compliance with the procedures set out in Rule 65. Among other things, this will require that notice be given to defendants before any preliminary injunction is ordered and that the court set forth reasons for granting injunctive relief.

■ If plaintiff is otherwise qualified for injunctive relief, the Anti–Injunction Act presents no barrier to an injunction sought by General Railway in a Rule 22(1) inter-

6. Section 634(b)(1) only technically extends federal question jurisdiction to the SBA's dispute with the Superintendent. General Railway asserts no federal claim against the SBA or the Superintendent. In the context of interpleader actions, however, "federal question jurisdiction exists if such jurisdiction would have existed in a coercive action by the defendant." *Bell & Beckwith v. United States,* 766 F.2d 910, 914 (6th Cir.1985).

7. General Railway argued before this Court that additional federal questions are presented by the case, making Section 1331 jurisdiction appropriate. These arguments were made only in a cursory fashion. General Railway may allege Section 1331 jurisdiction in its amended complaint if it wishes, and we leave it to the district court to determine if jurisdiction is properly stated under the general federal question statute in addition to Section 634(b)(1).

pleader action.[8] The Anti–Injunction Act states that:

> "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

The Anti–Injunction Act establishes a general rule that "[e]ach [state and federal] court is free to proceed in its own way and in its own time." *Kline v. Burke Constr. Co.*, 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226. A federal court can issue an injunction directed at state court proceedings, however, if "necessary in aid of its jurisdiction." The All Writs Act, consistent with the Anti–Injunction Act, provides that "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." 28 U.S.C. § 1651.

A federal court presiding over an interpleader action may stay pending state court proceedings involving the same interpled fund under the "necessary in aid of its jurisdiction" exception to the Anti–Injunction Act. As Judge Skelly Wright noted in *Pan American Fire & Casualty Co. v. Revere*, 188 F.Supp. 474 (E.D.La.1960):

> Usually interpleader will not be really effective unless all claimants are brought before the same court in one proceeding and restricted to that single forum in the assertion of their claims. To accomplish that end, * * * it is of course essential that the interpleader court enjoin the institution or prosecution of other suits on the same subject matter elsewhere. *Id.* at 483.

Judge Wright's reasoning has garnered the support of commentators. See, *e.g.*, 3A *Moore's Federal Practice*, ¶ 22.04(3) (1987)

(All Writs Act should be construed to permit injunction of state court proceedings in Rule 22 interpleader actions). If the district court finds that effective adjudication of General Railway's interpleader claim cannot proceed unless the Superintendent is prevented from collecting the Illinois state court judgment, General Railway may obtain the injunction it seeks, provided that Rule 65 requirements are met.

## IV.

At least one basis for exercising federal jurisdiction over this interpleader action exists, and the foregoing supplies guidance for future proceedings at the district court level. One further issue deserves comment, however. Even if the district court has jurisdiction over the interpleader action, it may be appropriate in the circumstances presented for the district court to abstain from adjudicating the issues presented.

After this appeal was filed, the district court considered and denied a motion for summary judgment filed by the Superintendent.[9] *General Railway Signal Co. v. Corcoran*, 748 F.Supp. 639 (N.D.Ill.1990) (order denying Superintendent's motion to dismiss and for summary judgment). In this motion, the Superintendent argued that the district court should abstain in deference to the New York liquidation proceedings being used to wind up the affairs of the now-bankrupt AFFI. We do not comment on the correctness of the district court's denial of the Superintendent's motion. This Court does not have the benefit of facts or briefs which might allow it to come to a reasoned decision on the abstention issue. However, the facts in the record on appeal raise some questions which we believe relevant to the appropriateness of abstention. We discuss them here so that they may be addressed on remand.

---

**8.** The Anti–Injunction Act is not at issue when an injunction is issued pursuant to Section 2361. That statute expressly authorizes injunctions to stay state court proceedings.

**9.** This motion was not brought to the attention of this Court by either party on brief or at oral

argument. The district court surprisingly did not stay proceedings in the district court pending the outcome of this appeal. The jurisdictional problem should be resolved by the district judge before proceeding further.

The Superintendent, claimant in this case, is in the process of gathering and distributing the assets of AFFI pursuant to a comprehensive New York state scheme for insurance regulation and liquidation. A New York state court has empowered the Superintendent "to take possession of the property and liquidate the business and affairs of AFF[I] * * * pursuant to Article 74 of the Insurance Law...." *In re Corcoran (American Fidelity Fire Insurance Co. and American Consumer Insurance Co.)*, No. 96–2960 (N.Y.Sup.Ct. March 26, 1986). In addition, he has been "vested with title to all of the property, licenses, corporate charters, contracts and rights of action of AFF[I] * * * pursuant to Section 7405 of the Insurance Law." *Id.* The federal interpleader action arguably threatens to frustrate the Superintendent's efforts to collect the assets of the now-bankrupt insurance company.

"Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 14, 103 S.Ct. 927, 936, 74 L.Ed.2d 765 (quoting *Colorado River Water Conservation Distr. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483). Nevertheless, three Circuit Courts of Appeal have held that the *Burford* abstention doctrine [10] requires district courts to abstain when creditors of an insolvent insurance company attempt to use a federal forum to adjudicate their claims against the state official appointed to act as receiver for the insurer. *Lac D'Amiante Du Quebec, LTEE v. American Home Assurance Co.*, 864 F.2d 1033 (3rd Cir.1988); *Law Enforcement Insur-*

*ance Co. v. Corcoran*, 807 F.2d 38 (2nd Cir.1986), certiorari denied, 481 U.S. 1017, 107 S.Ct. 1896, 95 L.Ed.2d 503; *Grimes v. Crown Life Insurance Co.*, 857 F.2d 699 (10th Cir.1988), certiorari denied 489 U.S. 1096, 109 S.Ct. 1568, 103 L.Ed.2d 934 (1989). This Court in dicta has stated that "abstention from the exercise of federal court jurisdiction * * * over claims arising out of such state liquidation proceedings is particularly appropriate." *In re Cash Currency Exchange, Inc.*, 762 F.2d 542 (1985), certiorari denied, 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232. Federal courts have deferred in particular to New York's method of liquidating insurance companies. *Lac D'Amiante Du Quebec*, 864 F.2d at 1033; *Law Enforcement Insurance*, 807 F.2d at 38; *Levy v. Lewis*, 635 F.2d 960 (2nd Cir.1980); *Corcoran v. Ardra Insurance Co.*, 842 F.2d 31 (2nd Cir.1988).

Though appellate courts are free to raise and resolve the abstention issue *sua sponte*,[11] *Waldron v. McAtee*, 723 F.2d 1348, 1351 (7th Cir.1983), we decline to do so on the record before us. Determining whether abstention is proper under *Burford v. Sun Oil*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, necessitates a fact-specific inquiry. *Lac D'Amiante du Quebec*, 864 F.2d at 1047. *Burford* requires abstention where a state creates a complex regulatory scheme and an exercise of federal jurisdiction would "be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, 96 S.Ct. at 1245. Among the factors that should be considered in a *Bur-*

---

**10.** See *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424, discussed *infra*.

**11.** The abstention issue was only mentioned in passing by the appellant (Br. at 24–25). The parties focussed their energies on arguing the appropriateness of granting full faith and credit to a New York Supreme Court order enjoining all possible claimants from instituting or pursuing any claims against the insurance company except by way of the liquidation proceedings. A full faith and credit analysis has been applied to liquidation orders of the kind at issue here. See *Superintendent of Insurance v. Baker & Hostetler*, 668 F.Supp. 1057 (N.D.Ohio.1986), affirmed

without opinion, 826 F.2d 1065 (6th Cir.1987). However, affording full faith and credit to such a broad injunction is problematic. Under the full faith and credit doctrine, a federal court must give the same *res judicata* effect to a state court judgment that would be given by courts of that state. *Charles Koen & Assoc. v. City of Cairo*, 909 F.2d 992, 997 (7th Cir.1990). Here it is unclear that the New York order is entitled to any *res judicata* effect, since the parties to this litigation did not appear before the New York state court ordering liquidation. The issue of how much deference should be given the New York state court is better analyzed by reference to abstention doctrine.

*ford* analysis are: (1) whether the suit is based on a cause of action which is exclusively federal, see *Central States, Southeast & Southwest Areas Health and Welfare Fund v. Old Sec. Life Ins. Co.*, 600 F.2d 671, 677 (7th Cir.1979); (2) whether difficult or unusual state laws are at issue, see *Board of Educ. v. Bosworth*, 713 F.2d 1316, 1320 (7th Cir.1983); (3) whether there is a need for coherent state doctrine in the area, see *Ryan v. State Board of Elections*, 661 F.2d 1130, 1135 (7th Cir.1981); and (4) whether state procedures indicate a desire to create special state forums to adjudicate the issues presented, see *Burford*, 319 U.S. at 325–327, 63 S.Ct. at 1103–04. The district court is in a better position than this Court to assess the relevancy of these factors.

■ One issue needing attention is whether the questions presented are those of federal or state law. This case involves questions of contract interpretation which are governed by state law. Plaintiff also has alluded to possible federal law issues, including the relevance of a statute setting a priority for claims made by the U.S. government, 31 U.S.C. § 3713. The existence of federal law questions tends to make abstention less appropriate, see *Levy*, 635 F.2d at 964. As *Levy* itself demonstrates, however, a federal court may abstain even from a case posing mixed federal and state law issues. *Levy* involved the interpretation of the terms of an employee welfare fund. The case potentially presented questions under the Employee Retirement Income Security Act of 1974. The Second Circuit thought it best to leave the federal questions in the first instance with the Superintendent, noting the importance of "proper respect for the expertise of state officials" and the desirability of avoiding piecemeal review. *Id.* We leave it to the district court to weigh the relative importance of federal and state law issues in this interpleader action and, if appropriate, to consider the factors identified by the *Levy* court.

■ Finally, the fact that this case is an interpleader action should not automatically preclude the district court from abstaining. One could argue that a federal court action in which the bankrupt insurer is interpled is less intrusive on the state liquidation proceedings than a direct claim against the assets of the insurer. In a federal interpleader action the Superintendent may be only one of several claimants. If the court decides in such a case that the Superintendent is not entitled to the fund, it could be said that the interests of the defunct insurer were never threatened by the federal court action since the insurer was never entitled to the funds in the first place. In other words, it seems that an interpleader action does not necessarily impinge upon the liquidation proceeding because it does not involve taking an existing asset of the insurer. Instead, it offers the Superintendent the possibility of obtaining an asset which is not yet the insurer's.

We are doubtful that any distinction between existing assets of the insurance company, over which litigation must be carried out in a state-created liquidation process, and possible claims of the company to assets in the hands of others, over which litigation can proceed in any federal district court, can be supported. The Superintendent is empowered to collect as well as distribute assets of the defunct insurance company. As was noted in *Corcoran v. Ardra*,

> The extent to which the Superintendent is able *to collect* thus affects the degree to which the insolvent insurer's estate will have assets sufficient to satisfy the claims of its creditors. 842 F.2d at 37 (emphasis supplied).

To deprive the Superintendent of the power to have his claims against others litigated in the New York liquidation proceeding would prevent the Superintendent from executing half of his job.

Also, because this case is not a typical interpleader action, there is a stronger rationale for abstention. Ordinarily in an interpleader case, the court is deciding whether to award the fund directly to one claimant or to the other. Here there is a third possibility: the SBA may be entitled to the fund, but only after it becomes an asset of the insurer. The Surety Bond

Guaranty Agreement between the SBA and the Superintendent states that the SBA will be entitled to its portion of any funds recovered by the Superintendent after the Superintendent receives the funds. The Superintendent thus has a colorable argument that the fund at issue is his to distribute, even if the SBA ultimately is entitled to a portion of the Illinois state judgment.

If the other *Burford* factors counsel abstention, the fact that this case proceeds in interpleader should not prevent the Superintendent from adjudicating the SBA's claim in New York. The Superintendent has never alleged that the SBA is not entitled to any portion of the recovery. He asserts only that any claim made by the SBA should be adjudicated in the New York liquidation proceeding. The Superintendent also never has suggested that he will refuse to pay the SBA under the Surety Bond Guaranty Agreements. The SBA, for its part, apparently has no objection to a state court forum. The SBA did not remove this case to federal court, as it could have under 28 U.S.C. § 1442(a). Like the Superintendent, it asserted in its answer to the interpleader complaint that there was no basis for an exercise of federal jurisdiction over this controversy.

The resolution of the abstention issue awaits reconsideration by the district court, perhaps after further briefing by the parties. We note that should the court decide that abstention is proper, it can choose either to dismiss the case outright or stay the federal proceeding so as to preserve the court's ability to resolve any federal law issues which are not addressed by the state court. See *In re Special March 1981 Grand Jury*, 753 F.2d 575 (7th Cir.1985).

### V.

For the foregoing reasons, the orders denying James P. Corcoran's motions to vacate the restraining order and dissolve the injunction entered by the district court are reversed. The injunction is vacated, and the case is remanded for further proceedings consistent with this opinion.